UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                    Case No. 13-20122

v.

                                    HONORABLE DENISE PAGE HOOD

JAJUAN MARTINEZ LEWIS

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant Jajuan Martinez Lewis was indicted by a grand jury on the charge of Felon in Possession of a Firearm, in violation on 18 U.S.C. § 922(g). The original indictment was dismissed without prejudice on February 5, 2013. On February 14, 2013, Defendant was again indicted on the same charge based on the same underlying facts. Defendant filed an initial Motion to Suppress in the first case, which was heard, and then, denied by the court in February, 2013. Defendant, represented by new counsel, filed a new Motion to Suppress Physical Evidence in the above-captioned case **[Docket No. 39, filed July 7, 2014]**.

During a hearing on this motion, a log book referencing the search warrant and the execution of the warrant was identified by the prosecution as a "Detroit Police Department Narcotics Log Book." It was determined by the 36th District

Court to be a "warrant log record." It was further determined to have been searched for, but deemed missing because it was either "destroyed or misplaced."

The background of the investigation that led to the search warrant and the search itself are more fully discussed in the Court's previous opinion denying the first motion to suppress and are incorporated herein by reference to the extent necessary for background. Order Denying Motion to Suppress, United States v. Jajuan Martinez Lewis, No. 12-20006 (Feb. 5, 2013) (Docket No. 29). The Court's opinion insofar as it outlines the protections of the Fourth Amendment is also incorporated by reference. *Id.*

Defendant Lewis now challenges the search warrant process for two different reasons. First, Defendant alleges that the search was conducted before a search warrant was obtained. He claims the search warrant was not issued before the raid began at 2:00 p.m on December 12, 2011. Second, he claims that there was no copy of the search warrant left at the residence searched as is required by law.

Additional witnesses were heard to support these new challenges to the search. Sergeant Rebecca McKay testified for a second time. She had testified during the initial challenge to the search. Her prior testimony is also incorporated by reference. Defendant's mother, who claims to be the owner of the home, testified. Defendant also took the stand.

McKay testified that she obtained the search warrant in compliance with the law.  She prepared the search warrant and search warrant affidavit on December 11, 2011, to be sent to Assistant Wayne County prosecutor, Megan Irving, for approval.  McKay emailed the search warrant and search warrant affidavit to Irving on the morning of December 12, 2011.  Irving approved and returned the search warrant the same morning.  McKay then obtained the approval of Magistrate Lockhart at 36th District Court.  McKay signed into 36th District Court at 9:15 a.m. and signed out at 9:26 a.m., according to her court appearance form.  The Magistrate's signature appears on the warrant, although there is no time stamp.  McKay testified that she was present when the Magistrate signed the search warrant which is dated December 12, 2011.  It can be reasonably inferred that the Magistrate signed the search warrant in the time McKay appeared at the court.

McKay further testified that she was part of the raid team and took the search warrant to the search.  McKay stated that she left the search warrant on the kitchen table at the residence, which she claims is her common practice.  The search warrant return was also left on the kitchen table, but she was not responsible for the return.  Defendant Lewis was at the table, but McKay did not hear him ask anything about the search warrant.  McKay understood that a woman claiming to be Defendant's mother arrived at the scene, but she did not have contact with her.  McKay testified that she saw her Lieutenant talking with a woman in a car.

3

Mrs. Patricia Lewis, Defendant's mother, testified she is the owner of the residence, having owned it since 2008. She came to the home while the search was in progress. She was giving her husband a ride to the residence where he lives. She does not reside there. Mrs. Lewis approached the residence as Defendant was being removed and was told by Defendant that the police would not show him the search warrant. Mrs. Lewis claims she then came in contact with an officer at the scene, advised him that she was the owner and asked to see the search warrant. He advised her to wait in her car and he would bring the warrant. Mrs. Lewis gave a description of the officer. Later, waiting in her car, she observed all the police leaving in their vehicles. She went in the residence and found only the search warrant return on the kitchen table. Mrs. Lewis testified that she searched for the search warrant, but never found it. Only Jujuan Abram, aged 22, had remained in the residence after the police left. The search warrant had not been left with him.

Defendant testified that he asked for the search warrant when the officers came in the house, but was never given the search warrant. He never saw a search warrant on the kitchen table. He testified he was told to shut up and lay down by the officers in ski masks. Defendant did see McKay at the residence, but did not ask her for a copy of the search warrant. He never saw McKay put a search warrant on the kitchen table.

The Court finds the search warrant was properly obtained. The reasonable inference from the 36th District Court log where McKay signed in and signed out is that the search warrant was signed by the Magistrate during that time. This is also supported by McKay's testimony that she saw the Magistrate sign the warrant. The search warrant is otherwise properly approved by the prosecutor's office.

There is also no evidence disputing McKay's testimony that she took the search warrant to the residence that was searched. There is no dispute a search warrant return was left on the kitchen table by another officer. Neither Defendant nor his mother saw a search warrant on the kitchen table. However, the Court finds the testimony that McKay left the search warrant on the table is credible. Defendant's arguments that there was not a valid search warrant at the time the residence was searched is belied by the timing of McKay at court and the Magistrate's signature on the search warrant. The Court finds there is sufficient evidence that the officers were armed with a valid search warrant at the time of the search and that a copy was left at the residence.

Accordingly,

**IT IS ORDERED** Defendant's Motion to Suppress **[Docket No. 39, filed July 7, 2014]** is **DENIED**.

/s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: January 9, 2015